**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| VIRGIL VADUVA, | : | Case No. 3:17-cv-41 |
| | : | |
| Plaintiff, | : | Judge Thomas M. Rose |
| | : | |
| v. | : | |
| | : | |
| CITY OF XENIA, OHIO, *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

**ENTRY AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT (DOC. 33), GRANTING IN PART DEFENDANT
CITY OF XENIA, OHIO'S MOTION FOR SUMMARY JUDGMENT (DOC. 34),
AND TERMINATING CASE**

---

This civil rights case arises out of the arrest of Plaintiff Virgil Vaduva ("Vaduva") on February 13, 2015 in Xenia, Ohio for violation of Xenia Codified Ordinance § 648.12, which places restrictions on where individuals may engage in panhandling. Vaduva was cited with panhandling within 20 feet of the City Hall building, a fourth-degree misdemeanor. A jury found Vaduva guilty of violating the statute, a verdict that Vaduva appealed. On appeal, Vaduva successfully argued that the Ordinance did not prohibit the solicitation of funds for the benefit of others, i.e., charitable donations. *State v. Vaduva*, 2016-Ohio-3362, ¶ 23, 66 N.E.3d 212, 218. The court of appeals vacated his conviction and remanded the matter to the trial court for a new trial. On remand, however, the prosecutor dismissed the case against Vaduva.

Approximately eight months after the Ohio court of appeals' decision, on February 9, 2017, Vaduva brought this action under 42 U.S.C. § 1983 against Xenia and a number of its officials and employees for alleged violations of his right to freedom of speech under the First and Fourteenth

Amendments. On motions directed to the pleadings, the Court dismissed all but Vaduva's claims against Xenia. (Doc. 28.) This case is now before the Court on Vaduva's Motion for Partial Summary Judgment (Doc. 33) and Xenia's Motion for Summary Judgment (Doc. 34). Vaduva seeks summary judgment against Xenia as to its liability under Section 1983 for violating his right to freedom of speech. (Doc. 33 at 1.) Xenia seeks summary judgment against Vaduva on all of his remaining claims. Both Motions are fully briefed and ripe for review. (Docs. 33, 36, 38; 34, 35, 37.)

For the reasons below, the Court finds that Vaduva lacks standing to assert his facial and as applied challenge to Xenia's panhandling ordinance; those claims are therefore dismissed and Vaduva's Motion for Partial Summary Judgment (Doc. 33) on those claims is **DENIED**. Vaduva also fails to present evidence sufficient to create a genuine issue of material fact concerning his failure-to-train, Equal Protection, and Due Process claims. Accordingly, Xenia's Motion for Summary Judgment (Doc. 34) as to those claims is **GRANTED**.

## I.   BACKGROUND

As mentioned, this case arises out of Vaduva's arrest for panhandling in violation of Xenia Codified Ordinance § 648.12. That ordinance provides, in pertinent part:

> (b)   *Panhandling restrictions and prohibitions*. No person shall solicit for panhandling in any of the following manners:
>
> [. . .]
>
> (13)   Within 20 feet of the entrance or exit of any public facility;
>
> [. . .]
>
> (d)   *Penalty*.   Whoever violates this section is guilty of panhandling, a misdemeanor of the fourth degree. Whoever violates this section three times or more within one year is guilty of a third degree misdemeanor.

2

Xenia Cod. Ordinance § 648.12.

"Panhandling" under § 648.12 is defined as follows:

> To request verbally, in writing, or by gesture or other actions, money, items of value, a donation, or other personal financial assistance. Further, panhandling shall include any request for a person to purchase an item for an amount that a reasonable person would consider to be in excess of its value.

Xenia Cod. Ordinance § 604.01.

On February 13, 2015, Vaduva challenged the ordinance in front of Xenia City Hall by asking for money from passersby for charity and using a sign that said "HELP THE POOR NEED $ FOR FOOD." (Doc. 33 at 5, ¶ 5 (Vaduva's statement of undisputed facts); https:/vimeo.com/119646554.) A video was made of this event, which can be viewed at https:/vimeo.com/119646554. Xenia police officers met with Vaduva and explained that there was an ordinance prohibiting his conduct. Vaduva replied that he believed the ordinance was unconstitutional. The police officers left, but later returned and issued Vaduva a citation for panhandling in violation of § 648.12(b)(13).

After a jury trial, Vaduva was convicted of violating § 648.12(b)(13) and sentenced to a suspended thirty-day jail term on the condition that Vaduva completed 100 hours of community service within 90 days and had no future violations within two years. *State v. Vaduva*, 2016-Ohio-3362, ¶ 15, 66 N.E.3d 212, 216. The trial court also ordered Vaduva to pay a $500 fine and court costs. *Id.*

As discussed in more detail below, on appeal, the Ohio Court of Appeals for the Second District vacated Vaduva's conviction and remanded the case for a new trial. On remand, the prosecutor declined to re-try Vaduva for violation of § 648.12.

## II. SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden to inform the court of the basis for its motion and to identify the sections of the pleadings, depositions, answers to interrogatories, and admissions on file, along with any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The adverse party then bears the burden to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id*. at 24 (emphasis in original).

In deciding a motion for summary judgment, the court should not weigh the evidence, make credibility determinations, or judge the truth of the matter asserted, but it must draw all "justifiable inferences" in the light most favorable to the non-movant. *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). This does not require the court to "wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990). In sum, based on the evidence called to the court's attention, it must decide whether reasonable jurors could find by a preponderance of the evidence that the nonmovant is entitled to a verdict. *Anderson*, 477 U.S. at 252.

## III. ANALYSIS

Liberally construed, Vaduva's Complaint contains four claims against Xenia. First, Vaduva asserts that § 648.12 should be declared unconstitutional on its face and as applied. (Doc. 1 at 5-9.) Second, Vaduva alleges that Xenia violated his Fourteenth Amendment rights by failing to train and supervise the police officers who arrested him pursuant to the unconstitutional policy against panhandling set forth in § 648.12. Third, Vaduva alleges that Xenia selectively enforced § 648.12 against him in violation of the Equal Protection clause of the Fourteenth Amendment. Fourth, and lastly, Vaduva alleges that Xenia deprived him of Due Process under the Fourteenth Amendment.

The Court considers each of Vaduva's claims in turn below.

### A. Whether § 648.12 is Unconstitutional on its Face or as Applied

Before considering Vaduva's claim that Xenia's panhandling ordinance is unconstitutional, the Court must address—based on its review of the undisputed facts—the issue of standing. "'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37 (1976)). "[O]ne of the controlling elements in the definition of a case or controversy under Article III" is standing. *ASARCO Inc. v. Kadish*, 490 U.S. 605, 613 (1989). Federal courts "have an independent duty 'to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction.'" *Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505, 508 (6th Cir. 2006) (quoting *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 278 (1977)).

Pursuant to Article III, "a plaintiff must demonstrate standing for each claim he seeks to

press." *Davis v. Fed. Election* Comm'n, 554 U.S. 724, 734 (2008) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006)); *see also Phillips v. DeWine*, 841 F.3d 405, 414 (6th Cir. 2016), cert. denied sub nom. *Tibbetts v. DeWine*, 138 S. Ct. 301, 199 L. Ed. 2d 53 (2017); *Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012). To have standing, a plaintiff must establish (1) an "injury in fact," meaning "an invasion of a legally protected interest [that] is (a) concrete and particularized and (b) 'actual or imminent, not "conjectural" or "hypothetical"'"; (2) "a causal connection between the injury and the conduct complained of," i.e., the injury complained of must be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court"; and (3) that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (alterations in original) (citations omitted). These elements are commonly referred to as the "injury-in-fact," "causation," and "redressability" requirements. *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008).

"To establish standing for a free-speech claim, a plaintiff generally must show that 'the rule, policy or law in question has explicitly prohibited or proscribed conduct on the[ir] part.'" *DeWine*, 841 F.3d at 414 (quoting *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 711 (6th Cir. 2015)). Typically, a statute must be enforced against the plaintiff before he may challenge its constitutionality, but a pre-enforcement challenge may be permitted under certain circumstances if "threatened enforcement [is] sufficiently imminent," meaning there is a "a credible threat" that the provision will be enforced against the plaintiff. *Susan B. Anthony List v. Driehaus*, —U.S. —, 134 S.Ct. 2334, 2342, 189 L.Ed.2d 246 (2014).

6

Here, Vaduva does not have standing to assert his challenge to the constitutionality of § 648.12 because it does not prohibit his conduct. Although Vaduva was convicted of panhandling under § 648.12(b)(13), that conviction was reversed on appeal. Importantly, Vaduva's conviction was reversed because he successfully argued that, to qualify as "panhandling" under the definition of that term in Xenia Codified Ordinance § 604.01, "an individual must request funds for his or her personal use." Applying the rule of ejusdem generis, the court of appeals agreed and construed the definition of "panhandling" "to require a request for money, items of value, or a donation to be for the requestor's personal use." *State v. Vaduva*, 2016-Ohio-3362, ¶ 27, 66 N.E.3d 212, 218–19. The court of appeals further found that the trial court erred by providing jury instructions that failed to inform the jury that it must find that Vaduva requested money for his personal use in order to find he violated § 648.12. As a result, "the jury instructions essentially omitted an element of the offense." *Id.*

Under Ohio law, "a decision of a court of appeals constitutes conclusive evidence of the law within its appellate district and, thus, binds the courts of common pleas within that district, unless it is in conflict with a decision of the supreme court." 23 Ohio Jur. 3d Courts and Judges § 388 (citing *Hudson Distributors, Inc. v. Eli Lilly & Co.*, 4 Ohio Misc. 73, 33 Ohio Op. 2d 104, 209 N.E.2d 234 (C.P. 1965)). Since the reversal of Vaduva's conviction was never appealed to the Supreme Court of Ohio, the court of appeals' interpretation of the definition of "panhandling" is the law in the district. *See also Cowen v. State*, 101 Ohio St. 387, 397–98, 129 N.E. 719, 722 (1920) ("It is the right of the Legislature to enact laws, and the province of the court to construe them.")(internal quotation marks and citation omitted).

It is undisputed that Vaduva solicited money for charity, not for himself. He therefore did

not engage in any conduct prohibited under § 648.12. Nor has Vaduva presented evidence that he intends to request money, items of value, or a donation *for his personal use* where that conduct is proscribed under § 648.12. To the extent that Vaduva intends to solicit funds for charity again at Xenia City Hall, it is not prohibited by the ordinance and there is no evidence that the Xenia police department would enforce the ordinance against him under those circumstances. The city prosecutor's decision not to pursue a new trial suggests the opposite; that the city understands that the scope of the ordinance has been limited to exclude Vaduva's conduct.

Vaduva claims a concrete injury meeting the first requirement of standing because he was prosecuted under the panhandling ordinance. Due to the court of appeals' narrow construction of the definition of "panhandling", however, that injury was not caused by the ordinance. Instead, it was caused by a misapplication of the ordinance by law enforcement and the city prosecutor. Vaduva therefore cannot establish the necessary causal connection to confer standing. In addition, Vaduva cannot satisfy the redressability requirement. If the Court were to find that § 648.12 were unconstitutional, it would not redress any injury or prospective injury to Vaduva. The court of appeals already declared his conduct outside the ordinance's prohibitions. With respect to Vaduva's conduct, a determination that § 648.12 is unconstitutional would be of no consequence.

The fact that Vaduva seeks to challenge the ordinance on overbreadth grounds does not change the analysis. It is correct that courts relax certain standing doctrines "because of the potential for an unconstitutionally overbroad law to 'chill' protected speech—that is, the 'judicial prediction or assumption that the statute's very existence may cause others before the court to refrain from constitutionally protected speech or expression.'" *DeWine*, 841 F.3d at 417 (quoting

8

*Prime Media, Inc. v. City of Brentwood*, 485 F.3d at 348) (internal quotes omitted). "But this exception applies only to the prudential standing doctrines, such as the prohibition on third-party standing, and not to those mandated by Article III itself . . ." *Id.* (citing *Prime Media*, 485 F.3d at 350; *Lujan*, 504 U.S. at 560 (injury in fact, causation, and redressability form "the irreducible constitutional minimum of standing")). Notwithstanding the overbreadth doctrine, the standing requirement is a constitutional mandate that is "absolute" and "irrevocable." *Prime Media*, 485 F.3d at 349–50.

For the above reasons, the Court dismisses Vaduva's challenge to the constitutionality of Xenia Codified Ordinance § 648.12, both facially and as applied, for lack of standing.

### B. Vaduva's *Monell* Claim for Failure to Train or Supervise

Vaduva alleges that Xenia is liable for its failure to properly train or supervise its police officers, which resulted in his unlawful arrest for panhandling under § 648.12. Under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), a municipality may be held liable for violation of a plaintiff's civil rights "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under § 1983." *Monell*, 436 U.S. at 694. The Sixth Circuit has stated that to satisfy the *Monell* requirements "a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)).

The Supreme Court has explained the factual allegations sufficient to prove a *Monell* claim

9

based on the inadequacy of police training:

> [T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact .... Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

*City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989). The Supreme Court later elaborated on what constitutes "deliberate indifference" in such cases:

> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cty.*, 520 U.S., at 410, 117 S.Ct. 1382. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.*, at 407, 117 S.Ct. 1382. The city's "policy of inaction" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton*, 489 U.S., at 395, 109 S.Ct. 1197 (O'Connor, J., concurring in part and dissenting in part).

*Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011).

Vaduva alleges that, by passing § 648.12, Xenia city officials enacted an unconstitutional policy against panhandling, which they directed the police to enforce against Vaduva. As discussed, the court of appeals later excluded Vaduva's conduct from the scope of the ordinance. Vaduva has come forward with sufficient facts, however, for a reasonable juror to surmise that Xenia had a policy against panhandling for oneself and for others, which it intended to enact in § 648.12 notwithstanding the court of appeals' subsequent construction of the ordinance.

For Vaduva to withstand summary judgment, he also must present facts showing that Xenia was deliberately indifferent to the violation of its citizens' rights. Vaduva has not carried that burden. The Court already determined that the police officers previously named in this suit were

10

entitled to qualified immunity because they could not have been on notice that they were violating any of Vaduva's clearly established constitutional rights when they issued him a panhandling citation. (Doc. 22 at 8.) The analysis in the Magistrate Judge's decision, which this Court adopted, noted the substantial differences between the authority relied on by Vaduva—*Speet v. Schuette*, 726 F.3d 867 (2013)—and the ordinance at issue in this case. (*Id*. at 7-8.) The analysis concluded that "while Vaduva cites authority clearly establishing the unconstitutionality of an outright ban on panhandling on public premises, he cites no authority—and the Court has found none—'which would have put [Defendants] on notice that anti-solicitation provisions like the ones at issue are unconstitutional.'" (*Id.* at 8 (quoting *Dickey v. Charter Twp. of Canton*, No. CV 16-10118, 2017 WL 3765787, at *6 n.7 (E.D. Mich. July 24, 2017).) The determination that the officers in this case are entitled to qualified immunity is not dispositive of whether Xenia may be liable for its conduct. Nonetheless, the fact that the panhandling ordinance's constitutionality could not have been known to city officials is strong evidence that they could not have acted with deliberate indifference.

The additional facts that Vaduva relies on to show deliberate indifference are his assertion that the Xenia City Council did not enact the ordinance to protect the "public health, safety, moral or general welfare of the public" and that, on February 12, 2015, Vaduva himself informed the Xenia City Council that the panhandling ordinance was unconstitutional and needed to be removed. (Doc. 33 at 5, 17; Doc. 35 at 9-10.)

Vaduva's assertion regarding the motivation behind the ordinance is not supported by the evidence. The minutes from the City Council meetings establish that public safety was a driving force behind the enactment of § 648.12. One Councilman discussed his receipt of multiple reports that residents, including children, were being harassed by panhandlers and had been approached by panhandlers at ATMs. (Doc. 34-1 at PageID # 335). Vaduva admits, in his Opposition, that during

11

the first reading of the ordinance on May 23, 2013, "Mr. Lewis 'noted there were a number of complaints from local businesses on individuals panhandling and harassing their customers outside their businesses.'" (Doc. 35 at 5.) Vaduva likewise admits that, on the second reading of the ordinance on June 13, 2013, a Councilman said that he "has had residents contact him about being harassed at ATM's and he has seen people panhandling from children in the parking lot of the karate school he attends[.]" (*Id*.) These statements are direct evidence that public safety was a concern driving the enactment of § 648.12.

Vaduva cites a Councilman's statement, during the second reading, that "Being needy or homeless is not an excuse to misbehave." (*Id.*, citing Doc. 34-1 at PageID# 383.) Vaduva argues that this statement reveals that the ordinance was actually passed because "some people did not like the homeless or needy exercising a constitutional right." (*Id*.) Without more, however, this statement does not support an inference of any bias against the poor. And, equally important, it does not undercut or diminish the genuine safety concerns voiced at the readings. In addition, Xenia City Council relied on their Law Director to draft the ordinance, who modeled it after similar ordinances in Beavercreek and Fairborn, Ohio. (*Id*. at PageID# 355-56.) Prior to its passage, Xenia City Council did not receive notice from any attorney or other legal expert that the ordinance would violate any constitutional rights. (*Id.* at PageID# 335.) A reasonable juror could not find that Xenia City Council enacted the panhandling ordinance without a genuine public safety purpose.

That Vaduva personally told the City Council that the ordinance was unconstitutional also is not enough to establish deliberate indifference. One citizen complaint, although in earnest, is not sufficient to put a City Council on notice of a constitutional issue. This is especially true where the record does not contain any evidence regarding the education, background and experience that would qualify the citizen as a constitutional expert or someone whose opinion on such topics should be given

significant weight. The City Council Meeting Minutes indicate that Vaduva refused to give his address before speaking, as required by Council rules, and then provided a false address. (Doc. 33-1 at PageID# 274.) This is the only background that the Council had about Vaduva according to the Minutes. Although Vaduva does not mention them, two other citizens also spoke out that day against the ordinance. (*Id.* at PageID# 274-75.) Both made moral, not constitutional, arguments for reconsideration of the ordinance. Neither of them represented himself or herself to be an attorney or legal expert.

For the above reasons, Vaduva has failed to create a genuine issue of material fact concerning his ability to prove that Xenia acted with deliberate indifference to his constitutional rights in enacting and enforcing § 648.12. Xenia is entitled to summary judgment on this claim.

### C. Vaduva's Equal Protection Claim for Selective Enforcement

In the Complaint, Vaduva alleges that Xenia violated the Equal Protection Clause by prohibiting him from engaging in panhandling. (Doc. 1 at 7.) In his Opposition to Xenia's Motion for Summary Judgment, however, Vaduva argues that he was selectively prosecuted and received a harsher sentence than other individuals in violation of his right to equal protection.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The Supreme Court stated this language "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). An equal protection may be based on allegations that the state made a distinction which 'burden[ed] a fundamental right, target[ed] a suspect class, or intentionally treat[ed] one differently from others similarly situated without any rational basis for the difference.'" *Doe v. Miami Univ.*, 882 F.3d 579, 595 (6th Cir. 2018) (quoting *Radvansky v. City of Olmsted Falls*, 395

F.3d 291, 312 (6th Cir. 2005)). In order to prevail on an equal protection claim, a plaintiff must prove that the state "intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990).

Courts have developed the doctrine of "selective enforcement" to address the discriminatory enforcement of an otherwise valid law in violation of an individual's constitutional rights. *Futernick v. Sumpter Township*, 78 F.3d 1051, 1056 (6th Cir.1996). "Selective enforcement claims are judged according to ordinary Equal Protection standards, which require a petitioner to show both a discriminatory purpose and a discriminatory effect." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). The Sixth Circuit established a three-part test for determining if selective enforcement has occurred:

> First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, [the official] must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*United States v. Anderson*, 923 F.2d 450, 453 (6th Cir.1991).

Vaduva argues that he was treated differently than four other people arrested for violation of the panhandling ordinance. (Doc. 35 at 10, citing Doc. 33-1 at PageID# 298-317.) All four were charged with a fourth-degree misdemeanor, as was Vaduva. One individual died, resulting in the dismissal of the charges against her. Two men had their charges reduced to minor misdemeanors, with no fines or jail time imposed. One was assessed costs, but the other's costs were waived with a notation of indigency. Neither demanded a jury trial, however, unlike Vaduva. (Doc. 33-1 at PageID# 300-02, 311 (withdrawing jury demand).) Vaduva notes that one of the men obtained his reduced charge through a plea bargain, which is also unlike Vaduva.

(Doc. 35 at 10.) The fourth individual was convicted of fourth-degree panhandling, just like Vaduva, although she also did not demand a jury trial. Vaduva asserts that she did not receive any jail time, but the records indicate that she was sentenced to 30 days of jail time with 27 days suspended. (Doc. 33-1 at 305.) Vaduva received 30 days of jail time, all of which were suspended on the condition that he complete 100 hours of community service.

Even if the Court were to accept that these individuals are similarly situated to Vaduva, their records do not support an inference of discriminatory animus or that Vaduva was treated differently without any rational basis. To the contrary, the sentencing of these four individuals and Vaduva reflects a rational approach to sentencing. Obviously, dismissing misdemeanor charges against the deceased is a rational allocation of prosecutorial resources. The two individuals who were convicted of reduced charges did not demand a jury trial. It is common knowledge that a jury trial imposes a greater burden on the public, prosecutors and the court system. Prosecutors therefore routinely offer incentives for criminal defendants to waive their right to a jury, including the agreement to pursue a reduced charge. The only individual who was charged with the same fourth-degree misdemeanor as Vaduva also received jail time, although was ordered to serve three days whereas Vaduva received community service hours. Vaduva correctly notes that none of the individuals received fines, whereas he was fined $500. However, the records for the other three individuals indicate that they were indigent and homeless. Imposing a fine on an individual who has no ability to pay is unlikely to serve any purpose. Again, it bears repeating that none of them proceeded to a jury trial.

Vaduva also has not established his membership in a protected class. He suggests that he was treated differently because he was not poor like the other three individuals. The financially

15

able are not a suspect class under the Equal Protection Clause. *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010) (citing *Papasan v. Allain*, 478 U.S. 265, 283–84 (1986); *Maher v. Roe*, 432 U.S. 464, 470–71 (1977)). As already discussed, the evidence does not support Vaduva's contention that there was no rational basis for the city prosecutor's sentencing approach.

Vaduva has not come forward with facts that could support a claim for violation of the Equal Protection Clause. The Court therefore grants summary judgment for Xenia on this claim.

### D. <u>Vaduva's Due Process Claim</u>

It is not clear from the Complaint or Vaduva's Opposition whether he asserts a substantive or procedural claim under the Due Process Clause of the Fourteenth Amendment. Regardless, his attempt to bring a triable claim under either theory fails.

The Fourteenth Amendment commands that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to establish a procedural due process claim, a plaintiff "'must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest.'" *O'Neill v. Louisville/Jefferson Cnty. Metro Gov't*, 662 F.3d 723, 732 (6th Cir. 2011) (quoting *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir.2009)).

Vaduva neither alleged nor presented any evidence of a procedural due process claim. The Complaint does not contain any allegations that he was denied a timely hearing or adequate legal proceedings. He was provided a jury trial on the citation and successfully appealed his conviction. There is simply no basis for a procedural due process claim.

Substantive due process is "the doctrine that governmental deprivations of life, liberty or

property are subject to limitations regardless of the adequacy of the procedures employed has come to be known as substantive due process." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992 (quoting Comment, *Developments in the Law—The Constitution and the Family*, 93 Harv.L.Rev. 1156, 1166 (1980)). Substantive due process claims are "loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that shock the conscience." *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir.1997) (internal quotations and citations omitted). Notably, "a citizen ... does not suffer a constitutional deprivation every time he or she is subjected to some form of harassment." *O'Connor v. Kelty*, No. 4:10 CV 338, 2013 WL 322199, at *7 (N.D. Ohio Jan. 24, 2013) (citing *United States v. Salerno*, 481 U.S. 739, 833 (1987)). "Rather, the conduct must be so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Id*. (citing *Salerno*, 481 U.S. at 833).

Importantly, the United States Supreme Court has expressed its reluctance "to expand the concept of substantive due process." *Cherry v. Howie*, 191 F. Supp. 3d 707, 720 (W.D. Ky. 2016) (citing *Albright v. Oliver*, 510 U.S. 266, 271–72 (1994)). Consequently, the Court has established that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id*. citing *Albright*, 510 U.S. at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (internal quotation marks omitted).

The First Amendment explicitly protects Vaduva's freedom of speech. Therefore, he cannot seek relief for the violation of that right under the doctrine of substantive due process.

Vaduva also fails to cite any conduct by city officials or the arresting officers that shocks the conscience. Accordingly, he cannot establish a claim for violation of substantive due process.

## IV. CONCLUSION

For the reasons above, the Court **DISMISSES** Vaduva's facial and as applied challenge to Xenia Codified Ordinance § 648.12 for lack of standing. Vaduva's Motion for Partial Summary Judgment (Doc. 33) is accordingly **DENIED**. The Court **GRANTS** Xenia's Motion for Summary Judgment (Doc. 34) and **DISMISSES** all of Vaduva's remaining claims. This case shall be **TERMINATED** on the Court's docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, September 4, 2018.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE